IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN WHITAKER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CESANO, INC.,<br><br>　　　　Defendant. | Case No. 21-cv-01018-MMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DISMISSING ACTION** |

Before the Court is defendant Cesano, Inc.'s ("Cesano") Motion, filed March 15, 2021, "to Dismiss Complaint." Plaintiff Brian Whitaker ("Whitaker") has filed opposition, to which Cesano has replied. Having considered the papers submitted in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

Whitaker, a quadriplegic who uses a wheelchair for mobility, alleges he "planned on making a trip in January of 2021 to the Palo Alto, California, area" (see Compl. ¶¶ 1, 14), and, in "seeking to book an accessible room at that location," he visited the "website reservation system" ("Website") for the Country Inn Motel ("Country Inn"), located at 4345 El Camino Real, Palo Alto, California (see Compl. ¶¶ 13, 16-17.) Whitaker alleges the Website "is owned and operated by [Cesano] and permits guests to book rooms at [the] Country Inn." (See Compl. ¶ 17.)

According to Whitaker, although the Country Inn Motel was "at a desirable place and location," he "found that there was insufficient information about the [Country Inn's]

---

[1] By order filed April 16, 2021, the Court took the matter under submission.

accessible features" on the Website "to permit him to assess independently whether a given hotel room would work for him." (See Compl. ¶¶ 13, 18.) In particular, Whitaker alleges, the Website did not sufficiently advise him whether (1) "the hotel room entrance and interior doors provide at least 32 inches of clearance," (2) "there is at least 30 inches width on the side of the bed," (3) the desk has "sufficient knee and toe clearance," (3) "the toilet seat height is between 17-19 inches," (4) the toilet has two "grab bars," (5) the "restroom sink" is "27 inches high, 30 inches wide, [and] 17 inches deep," (6) "plumbing under the sink [is] wrapped with insulation," (7) "the lavatory mirror is mounted . . . no more than 40 inches high," (8) the "type" of shower is "transfer, standard roll-in, or alternative roll-in," and (9) the shower has an "in-shower seat," "grab bars mounted on the walls," a "detachable hand-held shower wand for washing oneself," and "wall mounted accessories and equipment . . . all within 48 inches height." (See Compl. ¶ 22.)

Based on the above allegations, Whitaker asserts two Causes of Action, titled, respectively, "Violation of the Americans with Disabilities Act of 1990" and "Violation of the Unruh Civil Rights Act."

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material

allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir.1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

## DISCUSSION

By the instant motion, Cesano seeks dismissal of the Complaint in its entirety, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court addresses each Cause of Action, in turn.

### First Cause of Action

In the First Cause of Action, Whitaker alleges Cesano violated the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 1201, et seq., specifically, 28 C.F.R. § 36.302(e) ("the Reservations Rule"), a regulation promulgated thereunder. In support thereof, Whitaker alleges Cesano, in violation of the Reservations Rule, failed to state on the Website the information identified above as to exterior doors, interior doors, beds, desks, toilets, sinks, mirrors and showers. (See Compl. ¶¶ 22, 30.)[2]

In its motion, Cesano contends the First Cause of Action is subject to dismissal, as the Website (see Def.'s Req. for Judicial Notice ("RJN") Exs. 1, 2)[3] "contains all of the

---

[2] Although Whitaker also alleges Cesano "failed to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms" (see Compl. ¶ 33), he fails to plead any facts in support of that conclusory allegation. See Iqbal, 556 U.S. at 678 (holding "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not suffice to state claim for relief).

[3] The Court GRANTS Cesano's Request for Judicial Notice of the following documents: (1) copies of webpages found on the Website, specifically, the "Landing page," the "Accessibility Tab," and "various accessible room descriptions" (see RJN at 1:2-6, Exs. 1, 2), and (2) the Consent Decree entered in United States v. Hilton Worldwide Inc., No. 10-1924, Doc No. 5 (D.D.C. Nov. 29, 2010) (see RJN Ex. 4). See

information about the accessibility features of the [Country Inn's] guest rooms that the Reservations Rule requires" (see Def.'s Mem. of P. & A. at 2:11-13). As set forth below, the Court agrees.

The Reservations Rule provides, in relevant part:

> A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party[,] . . . [i]dentify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs.

See 28 C.F.R. § 36.302(e)(1).

On September 15, 2010, the Department of Justice ("DOJ") published a Guidance regarding the Reservations Rule ("2010 Guidance"), which Guidance states, "a reservations system is not intended to be an accessibility survey." See 28 C.F.R. Pt. 36, App. A, "Guidance on Revisions to ADA Regulation on Nondiscrimination on the Basis of Disability by Public Accommodations and Commercial Facilities." The 2010 Guidance also states:

> For hotels that were built in compliance with the 1991 Standards, it may be sufficient to specify that the hotel is accessible and, for each accessible room, to describe the general type of room (e.g., deluxe executive suite), the size and number of beds (e.g., two queen beds), the type of accessible bathing facility (e.g., roll-in shower), and communications features available in the room (e.g., alarms and visual notification devices). Based on that information, many individuals with disabilities will be comfortable making reservations.
> . . .
> [O]nce reservations are made, some hotels may wish to contact the guest to offer additional information and services. Or, many individuals with disabilities may wish to contact the hotel or reservations service for more detailed information. At that point, trained staff (including staff located on-site at the hotel and staff located off-site at a reservations center) should be available to provide additional information such as the specific layout of the room and bathroom, shower design, grab-bar locations, and other

---

United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) (holding courts "may consider . . . documents incorporated by reference in the complaint . . . without converting [a] motion to dismiss into a motion for summary judgment"); Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (holding courts "may take judicial notice of court filings and other matters of public record").

amenities available (e.g., bathtub bench). See id.[4]

As Cesano points out, "[t]he DOJ's interpretation of its ADA implementing regulations is entitled to controlling weight unless it is plainly erroneous or inconsistent with the regulation," see Fortyune v. City of Lomita, 766 F.3d 1098, 1104 (9th Cir. 2014) (internal quotation and citation omitted), and Whitaker does not contend, nor is there anything else to suggest, the 2010 Guidance is either plainly erroneous or inconsistent with the Reservations Rule. Further, even assuming, as Whitaker contends, the 2010 Guidance should not be afforded deference unless the Reservations Rule "is uncertain or ambiguous" (see Opp. at 23:21-24), Whitaker himself has characterized the task of interpreting the Reservations Rule as an "issue of first impression before this Court" and acknowledges there may be "competing ways" to interpret the Reservations Rule (see id. at 1:10-11; 15:25-16:4). In any event, irrespective of any such arguable concession of ambiguity, and "[l]ooking solely at the language of the regulation," which requires hotels to describe their accessible features in "enough detail" to "reasonably permit" individuals with disabilities to assess whether a given hotel meets their accessibility needs, "it is far from clear what constitutes 'enough' detail or when an individual's demand for more information is 'reasonable.'" See Love v. Wildcats Owner LLC, No. 20-CV-08913-DMR, 2021 WL 1253739, at *4 n.1 (N.D. Cal. Apr. 5, 2021) (internal citation omitted) (holding "the Reservations Rule on its own is ambiguous and the DOJ's interpretation of the regulation is entitled to deference").

Consequently, the Court finds, contrary to Whitaker's argument, "the [2010] Guidance is entitled to substantial deference." See Arroyo v. AJU Hotel Silicon Valley LLC, No. 20-cv-08218-JSW, Doc. No. 24, at 4:9-12 (N.D. Cal. Mar. 16, 2021) (citing Kohler v. Presidio Int'l, Inc., 782 F.3d 1064, 1069 (9th Cir. 2015)).

---

[4] Although the 2010 Guidance additionally identifies the accessibility information "older hotels with limited accessibility features" should provide on their reservation websites, see 28 C.F.R. Pt. 36, App. A, there is no dispute that the hotel here at issue is not such an "older hotel."

Nor is the Court persuaded by Whitaker's argument that the information identified in the 2010 Guidance, i.e., "the general type of room (e.g., deluxe executive suite), the size and number of beds (e.g., two queen beds), the type of accessible bathing facility (e.g., roll-in shower), and communications features available in the room (e.g., alarms and visual notification devices)," see 28 C.F.R. Pt. 36, App. A, is, in this instance, insufficient. In particular, although, as Whitaker points out, the 2010 Guidance states the information identified therein "may be sufficient" and that the DOJ "cannot specify what information must be included in every instance," see id., the 2010 Guidance "makes clear that details about a hotel's accessible features . . . can be provided once reservations are made" and, indeed, expressly states "a reservations system is not intended to be an accessibility survey," which elaboration "provides . . . support that websites need not include all potentially relevant accessibility information," see Love v. Marriott Hotel Servs., Inc., No. 20-CV-07137-TSH, 2021 WL 810252, at *7-8 (N.D. Cal. Mar. 3, 2021) (internal quotation and citation omitted) (finding defendant's reservation website, which "provide[d] the information contemplated by the 2010 Guidance," complied with Reservations Rule; noting, "if a website was required to have all relevant information, individuals would not need to call the hotel to get further information" (internal quotation and citation omitted)).

Moreover, shortly after the Reservations Rule was enacted, the DOJ, in an ADA enforcement action, took a position consistent with the foregoing analysis. Specifically, on November 29, 2010, the DOJ and Hilton Worldwide Inc. ("Hilton") entered into a consent decree ("HWI Consent Decree"), whereby Hilton was required to provide on its reservation websites "the same guestroom accessibility information enumerated in [the] 2010 Guidance." See id. (finding "the [HWI] Consent Decree tracks the requirements of the Reservations Rule," thereby providing "further indication of the DOJ's consistent position concerning the accessibility information required to comply with the Reservations Rule"; rejecting plaintiff's argument that "the Consent Decree never mentions the relevant regulation, never cites or uses the regulatory language, and was a settlement agreement reached . . . almost half a year before the regulation . . . bec[ame] effective and

1 enforceable"); see also RJN Ex. 4 ¶ 25(a). Since that time, more than ten years have

2 elapsed, and, during that rather extensive period of time, the DOJ has given no indication

3 that providing additional information is necessary.

4 The Court next turns to the question of whether the Website here at issue provides

5 sufficient accessibility information under the Reservations Rule as interpreted by the

6 2010 Guidance. In that regard, the Court finds the Website sufficient. First, in listing the

7 Country Inn's "amenities," the Website provides the following information: "ADA

8 accessible rooms," "In room accessibility," "Roll in shower," "ADA pool lift," and

9 "Accessible Parking." (See RJN Ex. 1.) Additionally, the Website identifies two types of

10 rooms that are "ADA accessible," and, for each type, a photograph is provided, showing

11 the layout of the room, and, in particular, the position of the bed(s) with respect to walls

12 and nearby furniture (see RJN Ex. 2). Further, in the event a person wishes to contact

13 the Country Inn to obtain more detailed information about accessibility features, the

14 Website provides a phone number and the hours during which the office is open. (See

15 RJN Ex. 1.) Although, as Whitaker points out, the Website describes various features

16 using only the term "accessible," he fails to cite any authority holding such description is,

17 under the Reservations Rule, insufficient, and, indeed, numerous federal district courts

18 have held to the contrary. See, e.g., Garcia v. Gateway Hotel L.P., No. CV 20-10752 PA

19 (GJSx), 2021 WL 936176, at *4 (C.D. Cal. Feb. 25, 2021) (collecting cases) (rejecting

20 plaintiff's argument that "claiming something is 'accessible' is a conclusion or opinion";

21 finding "[d]efendant's use of the term 'accessible' is not merely conclusory, it means that

22 the features in the hotel defined by [d]efendant as 'accessible' comply with the [ADA

23 Accessibility Guidelines]").

24 Accordingly, the First Cause of Action is subject to dismissal, and, given the above

25 findings, any amendment would be futile. Consequently, such dismissal will be without

26 leave to amend. See Gadda v. State Bar of Cal., 511 F.3d 933, 939 (9th Cir. 2007)

27 (holding dismissal without leave to amend is proper where amendment would be futile);

28 see also, e.g., Gateway Hotel L.P., 2021 WL 936176, at *5 (dismissing operative

7

complaint without leave to amend; finding defendant's reservation website complied with ADA and, "[t]hus, . . . any future amendment would be futile").

**Second Cause of Action**

In the Second Cause of Action, Whitaker asserts Cesano violated the Unruh Civil Rights Act, Cal. Civ. Code §§ 51-53, "by . . . failing to comply with the ADA with respect to its reservation policies and practices." (See Compl. ¶ 36.) Whitaker's Second Cause of Action is wholly predicated on the First Cause of Action and, as discussed above, the First Cause of Action is subject to dismissal.

Accordingly, the Second Cause of Action is subject to dismissal, see Whitaker v. Body, Art & Soul Tattoos L.A., LLC, 840 F. App'x 959, 961 n.2 (9th Cir. 2021) (holding, "[b]ecause [plaintiff] did not adequately allege a violation of the ADA, he necessarily has not adequately alleged a violation of the Unruh Civil Rights Act"), and, as with the First Cause of Action, such dismissal will be without leave to amend.

**CONCLUSION**

For the reasons stated above, the Motion to Dismiss is hereby GRANTED, and the instant action is hereby DISMISSED.

**IT IS SO ORDERED.**

Dated: May 14, 2021

MAXINE M. CHESNEY
United States District Judge